582

ELEUTERIO P. RODRÍGUEZ, Plaintiff and Appellant, *v.*
ANTONIO LEMA CUERVO, Defendant and Appellee.

No. 451.   Decided March 5, 1963.

*Angel Viera Martínez* for appellant.   *F. M. Susoni* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

According to the findings of fact of the trial court, on July 10, 1953 appellant signed a lease contract for the occupancy of a three-story house owned by appellee in which it was set forth that the sanitary fixtures were in perfect condition. Appellant established his residence on the main floor and on the other two floors he took up the former lessee's boarding business. Appellant started to receive complaints from his guests on the water and light service. In fact, the electric installation was deteriorating, some water pipes were partially blocked, and other sanitary fixtures were damaged. There is oral evidence in the sense that on one or two occasions appellant complained verbally of these deficiencies and that appellee failed to make the necessary repairs. The guests started to get disgusted and to leave, but it was not until March 18, 1954 that appellant urged an officer of the Economic Stabilization Administration to inspect the house. A report of the inspection was served in April 1954, but only on appellant.

On April 6, 1954 appellant wrote to appellee, through an attorney, on the hazardous condition of the electric installation, granting him a period of five days to make the necessary repairs, otherwise he would hold him responsible for any damages which may be caused, and that appellant would proceed to make the repairs and to deduct the cost thereof from the lease rental. This letter was received by appellee on April 8, 1954 and copies thereof were sent to the Chief of the Fire Service and to the Economic Stabilization Administration.

On April 9, 1954 appellant sent a letter to appellee, signed by appellant himself, informing him that that same day the Water Resources Authority had granted to appellant a period

of 15 days to correct the *defects* of the electric installation, urging appellee to correct such defects without delay; that the previous day the Chief of the Fire Service of Puerto Rico wrote a letter to appellee informing him on the *deficiencies* found in the electric system and urging that they be corrected as soon as possible; and on April 12 appellee acknowledged receipt of the letter of the Fire Chief informing him that the deficiencies would be corrected forthwith by Godofredo Ortiz, licensed electrician.

On April 15, 1954 appellant, through his attorney, sent another letter to appellee calling his attention to the *poor condition* of the electric installation of the building and informing him that his guests had vacated their rooms, as a result of which appellant had sustained damages for not less than $2,000, and that since appellee had failed to comply with his obligations as lessee [*sic*] (lessor?), the attorney had instructed his client, appellant herein, to vacate the leased premises, leaving appellant at liberty to claim damages if appellee insisted on making claim under the lease contract. Appellant did in fact vacate the house and on April 28, 1954, that is, prior to the expiration of the one-year contract, returned the keys to appellee.

In view of these facts, the trial court dismissed the claim for damages for breach of lease contract on the part of the lessor on the ground that, according to § 10 of Act No. 464 of April 25, 1946 (Sess. Laws, p. 1326), whenever any repairs are necessary, the lessee shall give written notice to the lessor and to the Economic Stabilization Administrator as well, in order that if the lessor fails to make the repairs of his own volition, the parties may be summoned for a hearing; and if the necessity for such repairs is verified, to order the owner to carry them out. If the owner fails to carry them out within the term granted to him, the Administrator shall authorize the tenant to make them and to deduct the amount

thereof from the lease rental in the manner which the Administrator may determine.

In this case, the trial court further says, the tenant "failed to give timely notice in writing to defendant, as landlord, of the deficiencies in the services which the landlord was bound to maintain. Plaintiff of his own volition permitted this situation to arise and to become aggravated without following the procedure fixed by law and he can not at this time urge the court to order the landlord to indemnify him."

In his petition for review the tenant contends that "The trial court committed gross error in concluding, as a matter of law, that the action for damages does not lie because the tenant failed to give timely notice *in writing* to the landlord of the deficiencies in the services which the landlord was obligated to maintain, notwithstanding it had concluded that prior to the written notices given in April 1954 plaintiff-appellant had protested verbally of the deficiencies, but that the lessor failed to make the repairs."

The law applicable to the case is § 10 of Act No. 464 of April 25, 1946—17 L.P.R.A. § 190—which provides: "The lessor is bound to make all necessary repairs to the rented property during the period of the lease, in order to maintain it in a condition suitable for the use to which it has been devoted, and to maintain all its services in operation; *Provided,* That if the lessor fails to make the necessary repairs or fails to maintain all the services in operation, as herein determined, after having been requested to do so by a health officer or by the tenant through a written notice, the Administrator shall summon the landlord and the tenant to a hearing in order to determine the need for the repairs, and the need having been verified, he shall fix the reasonable amount thereof and shall order the owner to carry them out; *Provided,* That if the landlord should not make said repairs within the time fixed by the Administrator, the latter shall authorize the tenant to make the repairs and to deduct the

amount thereof from the rent in the manner which said Administrator may determine for the purpose. The landlord shall not be required to make repairs which may become necessary because of malicious damages caused by the tenant."

According to the theory of the tenant-appellant, that legal provision is not applicable because it does not create an action for damages whenever the lessor, with knowledge of the need for such repairs, fails to carry them out, which is the situation of fact posed in the case; that the action for damages arises from the nonperformance by the lessor of his obligation to make in the rented house the necessary repairs from the moment he learns of the deficiencies; and that such action is governed by the provisions of the Civil Code which regulate the lessor-lessee relationship and the action for damages for the lessor's negligence or failure to fulfill his legal obligations with the lessee.

If the theory of the tenant-appellant were to prevail, the sections of the Civil Code of Puerto Rico applicable to the issue would be the following: § 1444—31 L.P.R.A. § 4051—which provides: The lessor is obliged to make in the thing object of the contract the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined; § 1449—31 L.P.R.A. § 4056—which provides: The lessee is obliged to give notice to the owner, with the least possible delay, of the necessity of all the repairs included in § 1444, the lessee being liable for the damages which by reason of his negligence to give timely notice of the necessity of such repairs may be caused to the owner; and § 1446—31 L.P.R.A. § 4053—which provides that if the lessor or lessee should not comply with the obligations mentioned in §§ 1444, as respects the lessor, and 1445, as respects the lessee, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force.

In order to have a better picture of the doctrinal concordance of certain lease provisions, we must add on our own account § 1470—31 L.P.R.A. § 4091—which provides: In the absence of a special agreement in the lease contract for the repairs of town property, which should be borne by the owner, the customs of the place shall be observed, and in case of doubt they shall be understood as for the account of the owner; § 1448—31 L.P.R.A. § 4055—which provides: If during the lease it is necessary to make any urgent repairs in the thing leased which can not be postponed until the expiration thereof, the lessee shall be obliged to permit the work, even though it be very annoying to him, and even if during such repairs he may be deprived of a part of the estate, and if the work should be of such nature that the part which the lessee and his family require for a dwelling becomes uninhabitable, the lessee may rescind the contract; and § 1807—31 L.P.R.A. § 5146—which provides: The owner of a building is liable for the damages which may result from the collapse of the whole or part thereof, if it should occur through the absence of the necessary repairs.

██ Although it is our judicial duty to reconcile, whenever possible, the conflicting provisions of two statutes on the same subject matter, we must not forget that in the case of special provisions and general provisions the former prevail over the latter in everything expressly covered by the special provisions. This being so, it is clear that § 10 of Act No. 464 of April 25, 1946, in everything concerning *necessary repairs*, substitutes the provisions of § § 1444, 1446 and 1449 of the Civil Code of Puerto Rico (1930).

Regarding the lessor's obligation to maintain the thing leased in a condition suitable for the use to which it has been devoted, the provided clause of § 10 of Act No. 464 establishes another means whereby the Economic Stabilization Administrator may compel the lessor to comply with this obligation by determining the necessity of such repairs, fixing

the reasonable cost thereof, and ordering the lessor to make them within a period fixed by the Administrator; and if the lessor fails to make them, by authorizing the tenant to make them at his expense and charge them to the lessor.

■ Regarding the lessee's notice to the lessor of the necessity of such repairs, which according to § § 1470 and 1449 of the Civil Code of Puerto Rico could be made verbally or in writing—10 MANRESA, *Comentarios al Código Civil Español* 585 (Reus ed., 1950)—the first provided clause of § 10 of Act No. 464 requires the lessee to give notice to the lessor in writing. Once again the duty to be diligent imposed on the lessee, by reason of his being the person who maintains "more direct and immediate relation with the thing during the term of the contract," is consecrated by legislation. (MANRESA, at p. 584.)

■ Regarding the damages for failure of the lessor to comply with his duty to make ordinary repairs, the Reasonable Rents Act of Puerto Rico being, as it is, founded on the principle of avoiding "abuse of right," that is, to avoid that juridical situation which, though legal in the ordinary course of contract results in evident inequality between the obligations, we must bear in mind, in construing the classical rule, the remedial purpose of the reform sought by the contemporaneous rule in order to achieve a well-balanced administration of justice. It is unquestionable that the new coercive method contained in § 10 of Act No. 464 does not leave to the discretion of the parties, insofar as ordinary repairs are concerned, any cause of damage which the lessor's indolence as well as the lessee's malice may produce. Any "abuse of the right" on the part of the lessor is at present neutralized by the speedy and efficient remedies provided in favor of the tenant to obtain such ordinary repairs, even with the State's intervention. Furthermore, our case law having sanctioned the duty to mitigate the damage by those who must suffer them, *Ortiz* v. *McCormick Steamship Co.*, 57

P.R.R. 551, 557 (Hutchison, 1940), the set of facts presented in this case would not have convinced us of their compensability even within the classical rule.

If we examine closely the text of the notices sent by the lessee in this case, it is clear that he was seeking some way of rescinding the contract, without being subject to the payment of rent and to the damages provided for the rescission, rather than to obtain the repairs of the leased building. The evidence shows that the lessor handled the verbal notices in the usual manner, as is customary, by sending a laborer from his business to repair the sanitary fixtures and the electric installations.

Judgment rendered in this case will be affirmed.